Good morning, Your Honors. May it please the Court. The two strands of decisions by this Court that the parties referred to, the Al-Astriadi Strand and the Boise Cascade Strand, they both involve a district court order. The question that the Court has posed in these other cases is whether or not the plaintiff is seeking to ask the Court of Federal Claims to review the merits of that order, to assess the validity of that order on its merits, or not. In the Al-Astriadi cases, the Court said the plaintiff was asking the Court of Federal Claims to review the merits. And the Court said as an Article I Court, the Court of Federal Claims has no jurisdiction to do that. That's reserved for the federal courts of appeals. In the Boise Cascade line of decisions by this Court, the Court said the plaintiff was not seeking to review the merits or assess the authority of the court, the district court, to issue the order. Rather, it was looking at the effect of the order. Did it affect a taking? Okay, but help me here, because as I read the district court order appointing the deceiver, it had two grounds. One was 13b, which is no longer a valid ground in light of the Supreme Court decision, and the other one was to freeze funds to pay for the contempt sanction. And there's no showing that that second ground is an invalid ground. So how does it get you anywhere to show that one of two grounds is improper? Well, Your Honor, that second ground only applied to the principals, the three named individual defendants. It did not apply to my clients. They were not held in contempt. They couldn't have been because they didn't participate in the district court proceeding. It's the same property, right? I'm sorry? Same property. No, not same property. Not same? Why not? No, no. The FTC went after the assets of the individuals, and it went after the assets of the companies. The companies' properties were never the subject of the district court's order because it was only the individuals who were held in contempt, not the companies. So the only order that was entered by the district court against the companies was an order under 13b. Which you could have chosen to appeal to the Fourth Circuit. Could have. And the Fourth Circuit, if it agreed with you, would have said you can't require the companies to place their property in the hands of the receiver, and you'd have won. That seems to me to be a classic case of the district court being reviewable, but by the Fourth Circuit, not by the Court of Federal Claims. Why is this, why is that not exactly what we prohibit in cases like Alastrea? Well, I agree, Your Honor, that we could have challenged the authority of the district court to enter that order. We chose not to. I fought that fight in the district court before Judge Massetti, and I lost. And I decided, we decided not to appeal to the Fourth Circuit on the question of the authority of the district court to enter an order requiring my clients to pay over money or to assume the responsibility. But what we didn't say to the Court of Claims in this case, we did not ask the lower court to review the merits or the authority of the district court to enter that order. We said, just as the plaintiff in Boise, Cascade, said, the effect of that order was to affect a taking under the Fifth Amendment. So we were not But if it was lawful, if what the district court did was entirely lawful, then there would be no taking. Your Honor, I You would agree with that. No, I, with due respect, I don't agree with that, because that's the same thing that happened in, in Boise, Cascade. The injunction was issued by the district court. No, but the district court in this case, unlike the district court in Boise, in Boise, all the district court did was to enter an injunction, which didn't result at that point in an actual taking. But here, the district court, as I understand it, took money from the companies and put it in the hands of the receiver. Isn't that the taking that you're contesting? We're not contesting the authority of the district court to do that. And in Boise, Cascade, it was the injunction itself that the plaintiff, Boise, Cascade, asked the Court of Federal Claims to review. It asked the Court of Claims, it assumed the validity of the injunction. It, as the, as the court pointed out in Boise, Cascade, the plaintiff was not challenging, did not appeal the injunction. Similarly, we did not appeal the order entered against us. But the court, this court said in Boise, Cascade, nevertheless, the mere existence of the injunction, a valid order not being challenged on its merits, affected a takings. And therefore, the Court of Federal Claims has jurisdiction to determine if the effect of that injunction, valid as it may have been, was a takings. That's what we're arguing here. We're not challenging. And I must, I must say that my, in reviewing my briefs in preparation for this argument, I think my brief was not crystal clear on this point. We're not challenging the authority of the district court to issue an order against my clients to pay money over to cover the contempt against the principles. What we're saying is, even if, I mean, I don't think the court had authority to do it, but I lost that fight and we didn't appeal. But even if it's a valid order and the district court had full authority to issue it, what was the effect of that order? The effect of that order was a taking. You run into cases, putting aside Boise, Cascade, you run into cases that say if you have a remedy by appeal, you have to pursue that and you can't just say this is a taking and ignore the remedy that would undo the wrong. Well, I think that Judge Bryson's maybe more optimistic than I would have been that the Fourth Circuit, if we had appealed, would have overturned it and said there was no authority. I think we made a calculated judgment to decide was that a likely outcome in the Fourth Circuit had we taken that remedy of an appeal on the merits of the authority of the district court to issue the order. We decided not to. We decided we would probably have lost in the Fourth Circuit. But be that as it may, we did not force it our right to seek compensation or to make a takings claim in the Court of Federal Claims. I could not. We could not have made that claim in the Fourth Circuit. I could not have argued to the Fourth Circuit that it was a taking. That's under the Tucker Act. The Fourth Circuit would have no jurisdiction to decide that question. Your original complaint here didn't allege a taking, right? It alleged an illegal exaction. Well, the formulation I used was illegal exaction. But I think what we meant was an illegal exaction by the combination of the FTC's action in seeking it and the district courts granting it. Okay, but if we confined you, if we said no, your complaint didn't allege a taking, it just alleged an illegal exaction. This isn't an illegal exaction, correct? Correct. But it is a taking. And I think that, and also, this court pointed out in Boise Cascade, the difference between the Boise Cascade line and the Alastair Ardy line of cases, the government was not an impartial arbiter here, standing on the sidelines. The FTC went back to the district court after the Fourth Circuit's decision and said, fix this. Fix this problem, because we forgot that the assets of the companies were not touched, couldn't have been touched, because they couldn't have been held in contempt. So change your order and issue a new order to take their money, too. That's the taking. That's the taking. Well, if that's the taking, that's exactly the taking that the Fourth Circuit presumably could have overturned. You say that's the taking. Yeah. And that was the order entered by the district court. Why could the Fourth Circuit not simply say, reversed, give the companies the money back? They might have done that, as I said. That would overturn the taking. They couldn't have. What you've characterized as the taking. They couldn't have addressed it as a taking. It doesn't, let's not use, forget the nomenclature. You would have gotten your money back, right? I think we would have lost. Well, you probably would have lost. Right. But if you had a good case, and if the Fourth Circuit heard your case, dealt with your arguments fairly, you say you had good arguments, you would have gotten your money back if you won. We had to make a decision. We had to make a strategic decision. Okay. Do we go to the Fourth Circuit and try to get our money back by arguing against the validity or the authority of the district court, or do we claim it was a taking? So we didn't flip a coin, but we made an assessment that the better choice, I made it for my clients, the better choice was to seek in the Court of Federal Claims to make a takings claim, not to challenge the authority of the district court, which I think we would have lost in the Fourth Circuit. You mentioned a couple of times the Boise-Cascade line of cases. What other cases are there that essentially say the same thing, Boise-Cascade? Because I'm aware of the cases that go the other way. I was not aware of any other than Boise-Cascade that goes the way Cascade does. There aren't any in this court, but there were in the Court of Federal Claims. We cited them in our brief. Okay. But none in this case. None in this court. In this court. Right. It's on page 24 of my brief. Colonial Chevrolet and alleys of Kingsport v. United States, two Federal Claims Courts decisions that were issued following Boise-Cascade and following that same logic, following that same theory, that you can have a valid order when you're not challenging its merits, you're not asking the Court of Federal Claims to challenge or to review the merits. You're saying I agree it's a valid authoritative order, but it affected the taking. In fact, it's hard to conceive of a judicial taking where that wouldn't be the case. It's always going to be the case that if you have a judicial taking, which the Supreme Court and this Court have recognized, it's almost impossible to imagine a situation unlike that wouldn't be just like this case where you're not challenging the validity. You're not challenging the authority, but you're saying that decision, that district court order affected a taking. Because of that, I think this is a paradigm case to fit within the Boise-Cascade decision and that line. Not only because we're not challenging the authority of the district court. We're not challenging whether it was a valid order. We're not asking. We didn't ask the Court of Federal Claims to review the merits of that. What are we saying? Granted, it's authoritative. Granted, it's valid. Nevertheless, it affected the taking, and that's something that this Court, Court of Federal Claims, does have jurisdiction to review. Now, the government also says even if there was jurisdiction, there was a lack of a cognizable claim. That's not true. They say because the Fourth Circuit adjudicated this question. The Fourth Circuit never adjudicated this question. We didn't appeal. We weren't parties to the Fourth Circuit's decision. So that was never resolved by the Fourth Circuit. What would your argument have been before the Fourth Circuit if you had appealed? My argument would have been, as Judge Bryson says, that the district court had no authority to issue an order against my clients because they were not held in contempt. And the only order that was issued against my clients was under 13B in a unanimous agreement, so that's not valid. But it was an order for receivership of particular property, right? I'm sorry? It was an order for receivership with respect to particular property, right? It was an order to turn over to the receiver all their assets and property. So the issue on the Fourth Circuit would have been who owned the property? Well, there were two different sets of property, as I said, Your Honor. There was the property of the individuals, and I'm not representing them. There was the property, separate property, separate assets owned by the companies. And the FTC, realizing they had a problem, said, okay, we've got protection from the Fourth Circuit for the property of the individuals. We forgot about the assets and property of the companies. So please, district court, enter an order as to them. That's what was in the district court's order. He ordered that they turn over their assets, their separate assets and properties. Okay. I'm going to save the rest of your time. Mr. Phillips. Thank you, Your Honor. May it please the Court. The Court of Federal Claims properly dismissed this illegal exaction claim for lack of jurisdiction, and that decision should be affirmed. Now, we've had a lot of discussion today about whether this is a takings or an illegal exaction claim. Your Honors are correct. This was brought as an illegal exaction claim, which presupposes that there is some illegality in the action of the district court here. That illegality is something that could not be reviewed by this court because that establishes, in the Alice Duarte line of cases, that this court cannot look at the propriety of the underlying Article III court's decision-making. And there is no path here, under how this was alleged, where this court would not have to address the actual propriety of the district court's decision through the turnover order of requiring these assets go to the receivership to pay for the contempt judgment. Your Honor, did discuss there was this 13B claim and then the contempt order. And the Fourth Circuit has reviewed all this. Help me understand what the property is. As I understand, Mr. Kessler, he's saying there's some property that was owned by the individuals and some that was owned by the corporation. Is it the same property with a dispute about who owns it? What's going on? As I understand, Your Honor, from the district court's decision, and this is in 42F sub 3rd, 373, and this is sort of a general consideration there, the entities were so intertwined that all the property was considered by the district court to be property of the combined entity, both the individual and the entities, because the individual, Mr. Puckey, and the other two people were controlling everything. So I don't understand there to be a distinction, a specific distinction about any property. But more importantly, that would have been an issue dealt with by the district court and should again be dealt with by the district court of the Fourth Circuit. So it would have been appealed to the Fourth Circuit? It would have been appealed to the Fourth Circuit because this was the subject matter of what was going on in the district court in the Sanctuary Belize litigation. And as we've heard, there was a choice not to appeal that second decision after it had gone up to the Fourth Circuit and was vacated in part and remanded back. The district court then addressed again whether the contempt order could stand and the assets could be provided to the receivership and addressed that as far as the individuals went. The Bi-Belize entities, which were controlled by the individuals, chose not to take that route, chose to do this sort of end-run, this collateral attack in this court by suggesting that their challenge to the district court's determination in the turnover order should be considered something different. So if I understand it then, one of the contested issues in the district court was whether the assets were so integrated between the individuals and the company that the assets could fairly be moved over to the receiver in order to deal with the consequences of the contempt judgment. As I understand it, yes, Your Honor. All right, and that would be an issue before the Fourth Circuit if there had been an appeal. And it would also necessarily be an issue, would it not, if the Court of Federal Claims had reached the merits? Wouldn't the Court of Federal Claims have had to decide whether or not that property was, in fact, properly characterized as property of the individuals? Yes, Your Honor. If the Court of Federal Claims had asserted jurisdiction in this case, they would have had to effectively reweigh the same determination that the district court and then the Fourth Circuit was looking at. I'll click on another way of review. Go ahead. I was just going to say that's because of the illegal exaction nature of the claim brought, right? Yes, Your Honor. Because the illegal exaction nature of the claim, and this is one of the distinctions this court knows between takings and illegal exaction, I think we were getting at, taking is presupposed to be a lawful action. And illegal exaction, on the other hand, suggests that the government somehow did something outside of its authority in the law. So by characterizing this as an illegal exaction claim, we are at the situation where this court, or the Court of Federal Claims, has to address the propriety of the action taken here, which was the district court ordering the assets through the turnover order go to the receiver. Was there also an issue as to whether the corporations were subject to the contempt finding? I believe it was discussed there, Your Honor, but the opposing counsel is correct that the contempt finding did not go specifically to the entity corporations like Bybelese, but the other finding by the district court was that these entities were so intertwined that there was no practical difference. So the district court did address this, and this was addressed. I believe there was some discussion in the first Paquet decision at the Fourth Circuit. I don't recall. I can search, Your Honors, if it was discussed again at length in the second Paquet decision. But this was all before the district court in Maryland and then was appealed up to the Fourth Circuit, which is why we've stated in our brief there is no path for this court to address that does not require this court, or the Court of Federal Claims in the first instance, to actually look at the propriety of the district court's order turning over these assets to the receivership. But even if, Your Honor, there were no jur... Even if there were jurisdiction here, there would still be the issue of collateral estoppel for all the same reasons we're talking about. All these issues have already been addressed by the Fourth Circuit or the district court through the turnover order. So there's nothing left for this court to do that would be different. We would have a second court reweighing the same evidence and potentially, in this case, coming to a separate or different conclusion and also leading to sort of an odd result here where the Bibleese entities have stated in the reply brief what they're looking for is this court to say that this was an illegal exaction, the district court's requirement to turn over the assets to the receivership, and then return that same amount of value, 120, to these plaintiffs so they can then pay the contempt judgment. What that is doing is saying that they no longer, either the individuals or the entities, have to pay the contempt judgment, but the government has to now fund, through an illegal exaction claim, the money that's going to be paid to cover that contempt judgment. And unless the court has other questions, I think we stand on our briefs. Okay, thank you. Mr. Koslow. May it please the Court, first, this is again on Judge Dyke's point about whose assets are we talking about. On November 17, 2022, which is two weeks after the Fourth Circuit's first decision, the FTC went back to the Fourth Circuit and said, wait a second, if you nullify under 13b just the portion of the orders which were entered against the individuals, and you don't touch the, if you meant to also vacate the judgment against the companies, the status of the money, I'm quoting now from page 2, of the FTC's motion for clarification or alternatively petitioned for rehearing and bank, filed on November 17, 2022, in the Fourth Circuit. And they said because significant assets held by the receiver for redress to the victims of the appellant's fraud came from the defaulting companies. And then on the next page, page 3, the FTC said what's going to happen if you don't change your order or if you don't, if you actually meant what you said, that 13b requires the vacatur of the order against the individuals, then the companies are going to go back to the district court and they're going to say, give us our money back. So it's clear that there were two sets of assets and property involved. One for the individuals, the three individuals, and separately for the companies. And that's what the FTC was worried about. They did not have, they had nothing in the district court's order which would have protected them from letting the companies get their money back. And their concerns were put to rest by the district court later entering an order, I take it, that put that money back into the hands of the receiver. Not the money from the individuals. No, no, I understand that, but they were concerned, you say. They were concerned. That the companies would hold on to their funds. Right, so the Fourth Circuit... Which the district court resolved in the FTC's favor. But what happened, Your Honor, was the Fourth Circuit denied, summarily denied the FTC's motion for clarification, meaning they did intend to say that the only order against the companies, which was under 13b, was vacated. Well, that gives you an even stronger argument, or would have, in the Court of Appeals, if you're right about that, of saying that the district court disregarded the mandate. That's when... And you could have gone to the Fourth Circuit. Well, that's exactly... I'm having a hard time seeing what relief that you couldn't have gotten from the Fourth Circuit that you think you were entitled to get from the Court of Federal Claims. I did make that argument back to the district court. I said exactly that. All right. And the district court disagreed with me. I lost that fight. Which gave you a one-way ticket to the Court of Appeals. Right, it did. But in my assessment, we would have lost that fight. And we had a better argument, I think, to make to the Court of Federal Claims that this order was a taking. And that's what we say, that just the Court of Federal Claims had jurisdiction to consider. The government says, no, that was already resolved by the Fourth Circuit. It was not. The Fourth Circuit never reached that issue. Couldn't have. Your original complaint was limited to an illegal exaction. Why should we allow you to argue at this point that you should be allowed to assert a taking disclaimer that was never in the complaint? Well, the illegal exaction, which we argued in our complaint, was an illegal exaction caused by the FTC's going to the district court to get this order. So it was inartful pleading on my part. Perhaps in a previous life, if I had submitted such a thing to the SG's office, Judge Rice would have not been pleased with that. But the fact of the matter is, it was basically the same thing. I didn't use the term judicial taking, but it was an illegal exaction in the sense that the FTC went back to the court and said, please enter this order for our benefit. That was a taking. Thank you. Okay. Thank you. Thank both counsel. The case is submitted.